UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA BROGAN-DAWLEY,

                              Plaintiff,

v.                                                            5:09-CV-0456
                                                                         (GLS/GHL)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF OLINSKY & SHURTLIFF        HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
300 South State Street, Suite 520
Syracuse, NY 13202-2060

SOCIAL SECURITY ADMINISTRATION     MICHELLE L. CHRIST, ESQ.
Office of General Counsel                           Special Assistant U.S. Attorney
*Counsel for Defendant*
26 Federal Plaza, Room 3904
New York, NY 10278

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION[1]

**I.    BACKGROUND**

    **A.    Procedural History**

On July 27, 2005, Plaintiff protectively applied for disability insurance benefits ("DIB"). Administrative Transcript ("T") 13, 66.  On October 11, 2005, Plaintiff's application was denied by the Social Security Administration.  T 46-49.  On September 11, 2007, a hearing was held before an Administrative Law Judge ("ALJ").  T 384-410.  On September 25, 2007, the ALJ determined that

---

[1] This matter was referred to me for report and recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Plaintiff was not disabled from the alleged onset date of December 1, 2002 through the date last insured of June 30, 2004.  T 10-23.

Plaintiff appealed to the Appeals Council.  T 63-65.  On February 18, 2009, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and issued a "corrective unfavorable decision," finding that Plaintiff was not disabled.[2]  T 4-7.  Plaintiff commenced this action on April 16, 2009.  Dkt. No. 1.

### B. Plaintiff's Contentions

Plaintiff makes the following claims:

1. The ALJ erred when he failed to find that Plaintiff's herniated discs, arthritis, obesity and uncontrolled diabetes mellitus were severe impairments.  Dkt. No. 12 at 15-20.

2. The ALJ erred by failing to follow the treating physician rule when he gave less than controlling weight to the opinion of Plaintiff's treating physician.  Dkt. No. 12 at 20-22.

3. The ALJ's RFC finding is not supported by substantial evidence and is inconsistent with light work.  Dkt. No. 12 at 22-23.

4. The ALJ erred when he failed to rely upon a vocational expert to determine whether the claimant had attained any skills from her past work, and, if so, whether the skills were transferable to any other work that existed in the national or regional economy.  Dkt. No. 12 at 23-25.

Defendant disagrees, and argues that the decision should be affirmed.  Dkt. No. 15.

## II. APPLICABLE LAW

### A. Standard for Benefits

---

[2] The corrective unfavorable decision will be discussed in more detail later in this Report-Recommendation.

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520.  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[]  If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to

3

      determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

      The plaintiff-claimant bears the burden of proof regarding the first four steps. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (quoting *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

      **B.**    **Scope of Review**

      In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587-88 (2d Cir. 1984).

      A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### III.   THE PLAINTIFF

At the time of the administrative hearing, Plaintiff was fifty-eight years old.  T 384, 388. She lived with her husband in their one-story home.  T 390.

Plaintiff completed two years of nursing school.  T 390-91.  She was a licensed practical nurse in the state of Massachusetts.  T 391.  However, Plaintiff last worked as a manager at a sporting goods store.  *Id.*  She stated that she stopped working because she was "in too much pain." T 394.  She explained that she experienced pain in her knees, ankles, hands, and back.  *Id.*

### IV.   THE ALJ'S AND THE APPEALS COUNCIL'S DECISIONS

The ALJ first addressed when Plaintiff last met the insured status requirements.  T 15.  An individual must demonstrate the onset of disability on or before his date last insured in order to qualify for Social Security disability benefits.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Here, the ALJ determined that Plaintiff's date last insured was June 30, 2004.  T 15.  Plaintiff makes

no challenge to this determination.

The ALJ then made the following findings with regard to the period from Plaintiff's alleged onset date of December 1, 2002, through her date last insured of June 30, 2004:

1.  The claimant did not engage in substantial gainful activity.  T 15.

2.  Plaintiff had the following severe impairments: asthma and metabolic syndrome.  T 15.

3.  Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  T 18.

4.  Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light work.  T 18-22.

5.  Plaintiff was unable to perform any past relevant work.  T 22.

6.  Considering Plaintiff's age, education, work experience, and transferable work skills, Plaintiff was not disabled under the framework of the Medical-Vocational Guidelines.  T 22-23.

As noted, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and issued a "corrective unfavorable decision."  T 4-7.  The Appeals Council first found that the ALJ's finding that Plaintiff had the RFC to perform a *reduced range* of light work was not fully supported by the medical evidence.  T 5.  The Appeals Council then found that Plaintiff had the RFC to perform a *full range* of light work, that she could perform her past relevant work as a sporting store manager, and that she was not disabled.  T 5-6.

## V.  DISCUSSION

### A.  Severity

Plaintiff argues that the ALJ erred by failing to find that her herniated discs, arthritis, obesity and uncontrolled diabetes mellitus were severe impairments.  Dkt. No. 12 at 15-20.  Defendant

argues that the ALJ committed no such errors. Dkt. No. 15 at 5-10.

As stated above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).

An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. § 416.920(c). The severity analysis does no more than "screen out *de minimis* claims." *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citations omitted). If the disability claim rises above the *de minimis* level, then further analysis is warranted. *See id.*

### 1. Low Back Pain/ Herniated Discs

Plaintiff argues that the ALJ erred by failing to find that her "low back pain/herniated discs" was a severe impairment. Dkt. No. 12 at 16-18. For support, Plaintiff points to a Medical Source Statement completed by Jay F. Sullivan, M.D., her treating physician, on May 22, 2007. *Id.* at 16. She also points to Dr. Sullivan's progress notes dated November 8, 2004 to November 21, 2006, and an MRI report dated January 17, 2007, which showed multilevel degenerative changes, disc herniations, and disc bulging. *Id.* at 16-18 (citing T 229-30, 236-38, 303-04, 316-17, 353-54).

Defendant argues that Plaintiff confused the time period at issue. Dkt. No. 15 at 5. He states that while Plaintiff "no doubt has suffered limitations due to her impairments, there is no evidence that any of Plaintiff's conditions caused significant limitations in her ability to perform

7

basic work activities **prior to [her date last insured,] June 30, 2004**." Dkt. No. 15 at 5 (emphasis added).

Here, the ALJ found, although not explicitly stated, that Plaintiff's low back pain/herniated disks was not a severe impairment prior to the date last insured. As noted by the ALJ and the Appeals Council, during Plaintiff's first visit to Dr. Sullivan's office on November 18, 2003, Plaintiff rated her general health as good. T 5, 16, 349. With regard to her extremities, Plaintiff "states that she has not experienced joint pain, stiffness, swelling, gout, arthritis, limitations of movement, color changes, temperature changes, numbness, weakness or myalgias." *Id.* Regarding her back, Plaintiff stated that she had "no complaint of pain, stiffness or limitation of movement." T 348-49.

Defendant also points out that Plaintiff first reported experiencing back pain to Dr. Sullivan on March 14, 2005, which is well after the date last insured. Dkt. No. 15 at 7 (citing T 304). She stated that the back pain developed during a trip to Florida. T 304. She also reported that she had a history of bulging disks with a poor response to physical therapy and chiropractic treatment. *Id.* One week later, Plaintiff reported that her back pain was "better." T 302. She also described her lifestyle as "very active." *Id.*

In light of the foregoing, the ALJ's determination that Plaintiff's "low back pain/herniated discs" was not severe prior to the date last insured was supported by substantial evidence. Accordingly, I recommend that the matter in this regard be affirmed.

### 2. Arthritis

Plaintiff argues that the ALJ erred by failing to find that her arthritis was a severe impairment. Dkt. No. 12 at 18-19. For support, Plaintiff points to progress notes from

8

appointments with Dr. Sullivan in February and April 2004, in which it is noted that she reported experiencing joint pain, stiffness, swelling, and arthritis, (T 339), and "aches and pains in all joints" (T 332). Plaintiff also cites progress notes from October 2004 through 2005. Dkt. No. 12 at 18-19.

Defendant argues, *inter alia*, that while Plaintiff first complained of joint pain in February of 2004, she suffered no limitations in movement, numbness, weakness or myalgias. Dkt. No. 15 at 6 (citing T 339). Moreover, in April 2004, Plaintiff's joints were symmetrical with no visible or palpable masses, effusions, instability, weakness, or limitation in overall range-of-motion. T 334.

Here, the ALJ specifically found that Plaintiff's arthritis was not severe. T 18. The ALJ explained that Plaintiff's arthritis was "for the most part controlled with medication, and also [did] not significantly limit the claimant's ability to perform basic-work related activities for a continuous period of at least 12 months since prior to her date last insured." *Id.* He noted that Plaintiff first reported joint pain on February 25, 2004, but prior to that time she regularly denied any musculoskeletal complaints. T 16 (citing T 339). Moreover, the ALJ pointed out that by October 2004 "claimant reported that the joint pain had resolved." T 16 (citing T 320). Indeed, Plaintiff reported that her joint pain "resolved" and that she felt "much better." T 320.

The ALJ also found that Dr. Sullivan's treatment notes "did not set forth much in the way of clinical findings relating to the claimant's joints." T 17. He also noted that although several office notes indicated that multiple joints demonstrated moderate degenerative change and inflammation, there were no details as to "what joints [were effected] or the functional effects of the inflammation." *Id.*

In light of the foregoing, I find that the ALJ's determination that Plaintiff's arthritis was not severe prior to the date last insured was supported by substantial evidence. Therefore, I recommend

that the matter in this regard be affirmed.

### 3. Diabetes

Plaintiff argues that the ALJ erred by failing to find that her diabetes was a severe impairment. Dkt. No. 12 at 19. For support, Plaintiff points to a progress note dated July 25, 2005, which indicates that her Diabetes Mellitus Type II was uncontrolled. Dkt. No. 12 at 19 (citing T 293). She also points to progress notes from 2006 and 2007, which contain information regarding her glucose level and blood sugar level. Dkt. No. 12 at 19 (citing T 210, 259).

Defendant argues, *inter alia*, that the ALJ committed no such error and points out that Plaintiff's "new onset diabetes" was not diagnosed until a full six months after Plaintiff's date last insured. Dkt. No. 15 at 8.

Here, the ALJ found, although not explicitly stated, that Plaintiff's diabetes was not a severe impairment. T 18. In making this determination, the ALJ reviewed the relevant medical evidence, noting that Plaintiff was treated from February 2005 to September 2005 for diabetes. T 15-18. He also pointed out that Plaintiff's diabetes was not diagnosed until after the date last insured. T 18.

In light of the foregoing, the ALJ's determination that Plaintiff's diabetes was not severe prior to the date last insured was supported by substantial evidence. Therefore, I recommend that the matter in this regard be affirmed.

### 4. Obesity

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's obesity was a severe impairment. Dkt. No. 12 at 19-20. She states that for "the majority of the course of treatment she was listed at 5' 2" and approximately 200 pounds . . . which equates to a Body Mass Index of 36.6." *Id.* at 19 (citing T 201, 224, 348, 343). In addition, Plaintiff argues that Dr. Sullivan described her

as obese in his treatment notes. *Id.* (citing T 313, 345).

Defendant first points out that Plaintiff did not claim obesity as an impairment when she applied for disability benefits. Dkt. No. 15 at 9 (citing T 88). Defendant then argues that while Plaintiff's weight was 195 pounds in November of 2003, Plaintiff later lost twenty pounds. Dkt. No. 15 at 9 (citing T 274, 348). Defendant also argues that Plaintiff never addressed how her weight affected her ability to perform basic work activities in the entire period before her alleged onset date through her date last insured. Dkt. No. 15 at 9. Further, Defendant notes that Plaintiff's physicians identified no restrictions in her ability to perform basic work activities because of her weight. *Id.* (citing T 333).

In this case, the ALJ found, although not explicitly stated, that Plaintiff's obesity was not a severe impairment. In making this determination, the ALJ reviewed the evidence, which with regard to the period before the date last insured, simply showed that in April 2004, Plaintiff had experienced "abnormal weight gain." T 16 (citing T 333). Thus, the record gives no indication that Plaintiff's weight significantly limited her ability to do basic work activities during the relevant period. T 333. Moreover, as Defendant points out, Plaintiff did not allege obesity as an impairment when she applied for disability benefits. T 88. It is the claimant's responsibility to identify and provide evidence establishing an impairment as well as severity. 20 C.F.R. §§ 404.1512(c), 416.912(c); *see also*, *e.g.*, *Gray v. Chater*, 903 F. Supp 293, 297 (N.D.N.Y. 1995) (citing *River v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983)). Further, during her hearing testimony, Plaintiff never cited obesity as a reason why she was unable to work. T 385-410. Similarly, Dr. Sullivan never cited obesity as a reason why Plaintiff was unable to work in the Medical Source Statement. T 181-87.

To the extent that Plaintiff argues that "Dr. Sullivan described her as obese in treatment notes," Dkt. No. 12 at 19 (citing T 313, 345), Dr. Sullivan simply noted that Plaintiff's "abdomen [was] obese." T 313, 345. To the extent that Plaintiff appears to argue that her height, weight, and/or body mass index, alone, automatically required a finding that Plaintiff's obesity was a severe impairment, Dkt. No. 12 at 19, "[t]here is no specific level of weight or [body mass index] that equates with a 'severe' or a 'not severe' impairment." SSR 02-1p, 2000 WL 628049, at *4 (S.S.R. Sept. 12, 2002).

In light of the foregoing, the ALJ's determination that Plaintiff's obesity was not severe prior to the date last insured was supported by substantial evidence. Therefore, I recommend that the matter in this regard be affirmed.

### B.     Treating Physician Rule

Plaintiff argues that the ALJ erred by failing to afford controlling weight to the opinion rendered by her treating physician, Dr. Sullivan. Dkt. No. 12 at 20-22. Defendant argues that the ALJ properly evaluated Dr. Sullivan's opinion. Dkt. No. 15 at 10-11.

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the

length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Here, the ALJ found that through the date last insured, "the claimant had the residual functional capacity to perform light work[3] except the claimant was limited to lifting and/or carrying 15 pounds occasionally, 10 pounds frequently, standing and/or walking more than 2 hours in an 8-hour workday, sitting 6 hours in an 8 hour workday with no repetitive use of hand or foot controls, no climbing ladders or scaffolds, or crawling, and occasionally stopping, kneeling, and squatting. She should also avoid concentrated exposure to pulmonary irritants."  T 18.

In making this determination, the ALJ reviewed Dr. Sullivan's opinion in great detail before affording it less than controlling weight.  T 19.  In a Medical Source Statement, Dr. Sullivan opined, *inter alia*, that Plaintiff was unable to lift or carry ten pounds, could sit or stand only thirty minutes at a time, and could walk only ten minutes at a time.  T 182-83.  He noted that she "must frequently change position[s]."  T 183.  He also opined that Plaintiff could sit, stand, or walk for only two hours total for each activity during an eight-hour workday.  *Id.*  During the "rest of the day," Plaintiff must be "supine."  *Id.*  He also noted that Plaintiff must use a cane to ambulate, had limited

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

use of her hands and feet, was unable to perform any postural activities, and had some environmental limitations. T 183-86. Dr. Sullivan indicated that he treated Plaintiff from January 2, 2004 to May 18, 2007. T 181.

Plaintiff argues that the ALJ failed to apply the required evaluative factors set forth in the regulations. Dkt. No. 12 at 21-22. However, the ALJ substantially applied the required factors. For instance, the ALJ reviewed the length of the treating relationship, the frequency of examinations, and the nature and extent of the treating relationship. T 16-17, 19. The ALJ explained that while Dr. Sullivan had a treating relationship with Plaintiff, the treatment history prior to her date last insured (June 30, 2004) was "quite brief." *Id.* Indeed, Plaintiff first saw Dr. Sullivan on January 2, 2004, for treatment of her asthma.[4] T 342-43. She saw Dr. Sullivan again on January 16, 2004 for follow-up treatment of her asthma. T 340-41. She then saw Dr. Sullivan on April 16, 2004, for treatment of a skin condition. T 331-32. Plaintiff's next visit with Dr. Sullivan was not until October 8, 2004. T 323-24.

Moreover, the ALJ discussed the medical evidence, or lack thereof, in support of the opinion. The ALJ explained that Dr. Sullivan's opinion was not supported by the medical evidence of record at any time prior to the date last insured of June 30, 2004. T 19. Indeed, the clinical findings noted by Dr. Sullivan in the Medical Sources Statement are from 2005 and 2006. T 181. In addition, the laboratory findings noted by Dr. Sullivan in the Medical Source Statement, including a CT scan and MRI report, are from after the date last insured. Further, when asked to identify the "medical findings that support [his] assessment and why the findings support the

---

[4] The record contains earlier progress notes from Dr. Sullivan's office, but those notes indicate that Plaintiff was seen by a physician's assistant, Michelle M. Ederer. T 346-49 (11/18/03 visit); T 344-45 (11/25/03 visit).

14

assessment," Dr. Sullivan provided the following somewhat strange response: "Unshaved legs noted on exam." T 187.

Further, the ALJ noted the fact that Dr. Sullivan was not a specialist. T 16. Specifically, the ALJ noted that Dr. Sullivan was a "family doctor." *Id.*

In light of the foregoing, the ALJ's evaluation of Dr. Sullivan's opinion was supported by substantial evidence. Accordingly, the determination in this regard should be affirmed.

To the extent that Plaintiff argues that the ALJ erred by failing to recontact Dr. Sullivan "for his opinion with regard to the onset of the limitations as outlined in the Medical Source Statement," Dkt. No. 12 at 21, it is unclear what Plaintiff is arguing. In any event, the obligation to develop the record further includes recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(e)). Here, there is no indication that the information from Dr. Sullivan was inadequate. Dr. Sullivan's progress notes clearly indicate that he saw Plaintiff on only three occasions before the date last insured. T 331-32, 340-43. Plaintiff does not suggest how the notes were inadequate, and the Court is unable to see any inadequacies in these three progress notes. Moreover, the fact that Plaintiff received limited treatment from Dr. Sullivan before the date last insured creates no need to recontact Dr. Sullivan. Therefore, the Court sees no error in this regard.

### C. RFC

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence and is internally inconsistent. Dkt. No. 12 at 22-23. Defendant points out that the Appeals Council corrected the ALJ's RFC finding when the Appeals Council found that Plaintiff retained the RFC to

perform a full range of light work. Dkt. No. 15 at 12. Defendant argues that this determination was proper. *Id.* at 12-13.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

The Court finds that Plaintiff's argument regarding the ALJ's alleged error is moot in light of the Appeals Council's corrective decision.[5] T 4-7. In any event, the Appeals Council reviewed the relevant medical evidence before determining that Plaintiff retained the RFC to perform a full range of light work during the period at issue. T 5-6. The Appeals Council correctly noted that the record contained very limited medical evidence regarding Plaintiff's impairments prior to June 30, 2004. T 5. The Appeals Council then pointed out that while Plaintiff received treatment on July 29, 2001, for a swollen knee without any injury, there was no evidence indicating that Plaintiff required further treatment for this condition during the period at issue. *Id.* The Appeals Council also noted that a treatment record dated November 13, 2003, indicated that Plaintiff's general health was good, and that Plaintiff reported no complaints of pain, stiffness, or limitations of movement. *Id.* The Appeals Council further noted that an April 13, 2004 report showed that Plaintiff's joints were symmetrical with no visible or palpable masses, effusions, instability, weakness or limitation in range of movement overall. *Id.*

The Appeals Council also noted that in connection with the request for a hearing, Plaintiff

---

[5] Plaintiff's counsel failed to address the Appeals Council's corrective decision.

alleged "additional impairments of asthma and metabolic syndrome." T 5. However, there was no evidence to indicate that Plaintiff required emergency room care or hospitalization for an asthma attack during the period at issue. *Id.*

The Appeals Council further explained that the medical records from Plaintiff's treating sources gave no indication that Plaintiff had any significant limitations which would prevent her from performing a full range of light work during the period at issue. T 5.

In light of the foregoing, the Appeals Council supported the RFC determination with substantial evidence. Therefore, the matter in this regard should be affirmed.

### D. Vocational Expert

Plaintiff argues the ALJ erred when he failed to consult a vocational expert to determine whether she had attained any skills from past work and, if so, whether they were transferrable to any other work that exists in the national economy. Dkt. No. 12 at 23-25. As previously noted, the ALJ found that Plaintiff could perform a limited range of light work, and was unable to perform her past relevant work. T 18-22. However, as pointed out by Defendant, the Appeals Council corrected the ALJ's decision by finding that Plaintiff retained the RFC to perform a full range of light work and was capable of performing her past relevant work as a sporting store manager. Dkt. No. 15 at 14 (citing T 5-6). Thus, Plaintiff's argument that the ALJ erred is moot.

In any event, the Appeals Council reviewed Plaintiff's records, noting that Plaintiff reported that she worked as a store manager from 1992 to 2002, and that Plaintiff described this job as light exertional work, requiring Plaintiff to write, type, or handle small objects with no lifting or carrying. T 5, 90. The Appeals Council also noted that in an undated Work History Report, Plaintiff reported that the heaviest weight she lifted was fifty pounds, and the weight she frequently lifted was less

than ten pounds, but that Plaintiff stated that she did not lift very often and "usually had men do [the lifting]." T 5, 82.  The Appeals Council then used the Dictionary of Occupational Titles to find that Plaintiff could perform her past relevant work as it is generally performed in the national economy.  Dkt. No. 15 at 13.  Plaintiff claims no error in this regard on the part of the Appeals Council, and the Court sees no such error.  Therefore, the matter in this regard should be affirmed.

**WHEREFORE**, for the reasons set forth above, it is hereby

**RECOMMENDED**, that the decision of the Commissioner of Social Security be **AFFIRMED**, and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 13, 2010
       Syracuse, New York

George H. Lowe
United States Magistrate Judge